914 So.2d 51 (2005)
Larry O. LITTLETON
v.
Janette G. MOSS.
No. 2005-C-0613.
Court of Appeal of Louisiana, Fourth Circuit.
July 29, 2005.
*52 William R. Forrester, Jr., Susannah B. Walter, Lemile & Kelleher, L.L.P., New Orleans, LA, for Donald H. McDaniel, as trustee for the Gay Noe McLendon Grantor Trust for the Benefit of Janette McLendon Moss and The Janette McLendon Trust established under the will of Gay Noe McLendon.
Philip K. Jones, Jr., Dena L. Olivier, Carey L. Menasco, Liskow & Lewis, New Orleans, LA, for Larry O. Littleton.
Shirley Basile Singreen, New Orleans, LA, for Janette G. Moss.
(Court composed of Chief Judge JOAN BERNARD ARMSTRONG, Judge JAMES F. McKAY III and Judge TERRI F. LOVE).
JOAN BERNARD ARMSTRONG, Chief Judge.
In this action for recognition and enforcement of a foreign judgment, relator, Donald H. McDaniel, as trustee for the Gay Noe McLendon Grantor Trust for the Benefit of Janette McLendon Moss and The Janette McLendon Trust Established Under the Will of Gay Noe McLendon, seeks review of the denial of his declinatory exception of lis pendens, his dilatory exception of prematurity and his peremptory exception of no cause of action to plaintiff-respondent, Larry Littleton's, August 10, 2004 petition for writ of attachment.
Plaintiff filed the instant action on September 22, 2003, to enforce a Texas state court judgment in the principal amount of $1.8 million rendered in his favor and against the non-resident defendant, Janette G. Moss, a/k/a Janette McLendon Moss. Plaintiff had a curator, Shirley Singreen, appointed to represent the defendant, Ms. Moss, and served the curator with the petition. On July 20, 2004, plaintiff served a writ of attachment upon Mr. McDaniel as trustee of the aforementioned trusts of which the defendant was a beneficiary. In response, Mr. McDaniel filed a motion to dissolve the writ of attachment. The trial court denied the motion, but this Court granted Mr. McDaniel's writ application and dissolved the writ of attachment on the ground that the non-resident *53 defendant had a registered agent for service of process who had not been served with the suit.[1]
On August 10, 2004, plaintiff served a second writ of attachment on Mr. McDaniel, as well as a garnishment citation. This is the writ of attachment that is the crux of the instant case. The relator challenged the writ of attachment by filing exceptions of lis pendens, prematurity and no cause of action. The matter was heard on March 11, 2005, and a written judgment denying the exceptions was signed on March 21, 2005. It is from this judgment of March 21, 2005, that the relator seeks relief. The curator/counsel for defendant, Shirley Basile Singreen, filed a companion writ with this Court, 2005-C-0614, complaining of the same March 21, 2005 judgment. While the issues raised by the two writ applications are based on the identical fact situation and, therefore, have much in common, the extent to which 2005-C-0614 differs from the instant writ is addressed in 2005-C-0614. Otherwise, the issue common to both will be addressed in this opinion.
The relator-trustee first argues that the August 10, 2004 writ of attachment was premature and of no effect because a statutory stay against the issuance of process was in effect pursuant to La. R.S. 13:4243 and La. R.S. 13:4244 because of the July 20, 2004 writ.
In his original petition plaintiff sought relief pursuant to the "Enforcement of Foreign Judgments Act," La. R.S. 13:4241, et seq. In Louisiana, a foreign judgment may be made executory either through an ordinary proceeding, with citation and service to the debtor, or through special proceedings provided in the Enforcement of Foreign Judgments Act. La. C.C.P. art. 2541; Morgan Building & Spas, Inc. v. Cutrer, 97-0599, p. 3 (La.App. 1 Cir. 4/8/98), 711 So.2d 777, 778. In the instant case, plaintiff chose to proceed under the Enforcement of Foreign Judgments Act.
La. R.S. 13:4243 provides for the mailing of notice of filing to the judgment debtor by the clerk or the plaintiff. Subsection "C" of that statute states that "[n]o execution or other process for enforcement of a foreign judgment filed hereunder shall issue until thirty days after mailing of the notice of the filing of the foreign judgment." [Emphasis added.] The relator acknowledges in his writ application that the notices of the filing of the petition were mailed to the defendant, but they were returned undelivered. The relator further acknowledges that on January 20, 2004, Shirley Basile Singreen was appointed curator ad hoc for the absent defendant. The curator, Ms. Singreen, acknowledges the same facts in connection with her companion writ application. Therefore, when the plaintiff filed an "Ex Parte Petition for Writ of Non-Resident Attachment", the January 20, 2004 appointment of Ms. Singreen six months earlier as curator for the absent non-resident defendant would normally be more than adequate to satisfy the thirty-day prohibition against attempts to enforce the judgment provided by La. R.S. 13:4243C, assuming for purposes of argument only that the issuance of a writ of attachment is considered to be an "execution" or "enforcement" of judgment as those terms are used in La. R.S. 13:4243C.
La. R.S. 13:4243C must be read in conjunction with La. R.S. 13:4244:
A. If the judgment debtor proves on contradictory motion that an appeal from the foreign judgment is pending or will be taken, or that a stay of execution *54 has been granted, the court shall stay enforcement of the foreign judgment until the appeal is concluded, the time for appeal expires, or the stay of execution expires or is vacated, upon proof that the judgment debtor has furnished the security for the satisfaction of the judgment required by the state in which it was rendered.
B. If the judgment debtor proves on contradictory motion any ground upon which the execution of a judgment of a court of this state would be stayed, the court shall stay enforcement of the foreign judgment upon requiring security for satisfaction of the judgment as is required in this state.
Thus, the thirty-day delay provided by La.R.S. 13:4243C was created, at least in part, in order to allow the judgment debtor an opportunity to ask for a contradictory hearing wherein he might assert any of the grounds in opposition to the execution of the judgment set forth in La. R.S. 13:4244. It is undisputed that the curator requested a contradictory hearing in a timely manner, but the hearing on the motion did not take place until August 13, 2004, after the attachment had already issued on August 10, 2004.
It is undisputed that neither the relator nor the curator raised any of the issues addressed by La. R.S. 13:4244A, i.e., the relator does not assert that there is an appeal pending in the foreign court that rendered the judgment and the curator does not contend that a stay of execution of the judgment has issued.
Therefore, the question next becomes one of whether either the relator or the curator raised any of the issues set forth in La. R.S. 13:4244B, i.e., any ground upon which the execution of a judgment of a court of this state would be stayed. In other words, 13:4244A and 13:4244B are directed at defects in the foreign judgment, not at defects in the Louisiana proceedings.
The curator filed what was styled an "Exception and Opposition" to plaintiff's petition to enforce the Texas judgment, a memorandum in support thereof, and a supplemental memorandum in support thereof. However, this pleading, on its own and as amplified by the accompanying memoranda, essentially was simply an exception of lack of personal jurisdiction to the Louisiana petition. It was not based on any contention that the Texas court lacked personal jurisdiction over the defendant. The curator made no argument except that the Louisiana court lacked personal jurisdiction over the debtor/defendant in the instant case.
Therefore, the curator's pleading which, in effect, is directed to defects in the Louisiana proceedings, failed to fall within the literal ambit of La. R.S. 13:4344. Accordingly, the relator has failed to show that the failure of the trial court to hold and rule on the August 13, 2004 hearing prior to issuing the writ of attachment violated the literal language of La. R.S. 13:4344 in any way. However, the matter does not end there.
As La. R.S. 13:4243 makes no specific reference to La. R.S. 13:4244, we must next address the question of whether the thirty-day delay provided by La. R.S. 13:4243C was intended to provide the judgment debtor with the opportunity to raise issues in addition to those set forth in La. R.S. 13:4244. To answer this question we must read La. R.S. 13:4243 and 13:1344 in conjunction with La. R.S. 13:4242 which provides that:
A copy of any foreign judgment authenticated in accordance with an act of congress or the statutes of this state may be annexed to and filed with an ex parte petition complying with Code of *55 Civil Procedure Article 891 and praying that the judgment be made executory in a court of this state. The foreign judgment shall be treated in the same manner as a judgment of a court of this state. It shall have the same effect and be subject to the same procedures, and defenses, for reopening, vacating, or staying as a judgment of a court of this state and may be enforced in the same manner. [Emphasis added.]
That portion of La. R.S. 13:4242 referring to affording the foreign judgment the same enforcement procedures and defenses as a judgment of this state would seem, when read without reference to the first part of 13:4242 referring to the filing of a petition in conformity with La. C.C.P. art. 891, to limit defenses to defenses to judgments. However, such a reading ignores the first part of the statute which says that the procedure for enforcing a foreign judgment is initiated by the filing of a petition pursuant to La. C.C.P. art 891. Thus, we are dealing not just with a judgment, but a petition as well and petitions are subject to exceptions. By analogy to La. C.C.P. art. 921A which provides that exceptions must be decided in advance of trial, we find that execution or enforcement of the foreign judgment may not be granted to a judgment creditor pursuant to a petition to enforce a foreign judgment as long as an exception to that petition is pending.
However, this reasoning does not apply to a writ of attachment. As a writ of attachment may issue prior to the time a petition has even been filed (La.C.C.P. art. 3502) it follows that the attachment articles do not contemplate delays for answering, filing or hearing exceptions, or in the case of foreign judgments, the delays contemplated by 13:4243C and 13:4244. The pendency of an exception does not prevent a court from issuing an attachment. Additionally, implicit in the language of La. C.C.P. art. 3501 is the authority for the court to issue a writ of attachment ex parte. Alessi v. Belanger, 93-2047, pp. 11-12 (La.App. 1 Cir. 10/7/94), 644 So.2d 778, 785. If a writ of attachment may issue ex parte, per force it may issue without waiting for any contradictory hearing under 13:4244. It also follows that within the contemplation La. R.S. art. 13:4243C and 13:4244 the writ of attachment in the instant case would be considered to be a conservatory writ and not a writ of execution or enforcement of a judgment such as a writ of fieri facias and, therefore, does not fall within the purview of La. R.S. art. 13:4243C or 13:4244. Accordingly, cases dealing with the enforcement or execution of a foreign judgment which do not involve attachments are not relevant to the evaluation of the efficacy of the attachment in the instant case.[2] Based on this analysis we find that the trial court committed no error under La. 13:4243C or 13:4244 when it issued the writ of attachment on August 10, 2004. In other words, there is no merit to relator's argument that plaintiff's petition for writ of attachment was premature because of a statutory stay provided by the Enforcement of Foreign Judgments Act. However, this determination is not dispositive of other issues raised by the relator.
Relator next argues that the trial court erred in denying his motion to dissolve the August 10, 2004 writ of attachment because the assets of a "spendthrift trust" cannot be seized except under the *56 circumstances set forth in La. R.S. 9:2005, and that it is disputed that the circumstances of the instant case fall under La. R.S. 9:2005.[3] Normally, the burden is not on the plaintiff in his request for a writ of attachment to negate all potential defenses such as exemption from seizure. The burden is on the party opposing the attachment to raise defenses. All the plaintiff normally need do is demonstrate the existence of one of the grounds for attachment. Therefore, the law does not require the plaintiff in the instant case to establish that the assets of the defendant/debtor held in the attached trusts are not exempt from seizure. It was sufficient for the plaintiff to allege under La. C.C.P. art. 3541(1) that the defendant/debtor was "a non-resident who has no duly appointed agent for service of process within the state."
However, it was the plaintiff, himself, who originally raised the issue in his July 20, 2004 petition for attachment by alleging that the debtor/defendant's "interest in the income and principal of the Louisiana Trusts is subject to seizure by Littleton pursuant to La. R.S. 9:2005(3), to satisfy the amounts due and owing under the Texas Littleton Judgment, which is a judgment for an offense or a quasi-offense committed by Moss."
The plaintiff's second writ of attachment filed on August 10, 2004, refers back to the July 20, 2004 writ of attachment and states that La. R.S. 9:2005(3) was "the statute upon which Littleton intends to rely to seize certain interests of Moss in certain trusts ..."
At the time plaintiff's second petition for writ of attachment was filed on August 10, 2004, La. R.S. 9:2005 stated:
Notwithstanding any stipulation in the trust instrument to the contrary, the proper court, in summary proceedings to which the trustee, the beneficiary, and the beneficiary's creditor shall be parties, may permit seizure of any portion of the beneficiary's interest in trust income and principal in its discretion and as may be just under the circumstances if the claim is based upon a judgment for:
Alimony, or maintenance of a person whom the beneficiary is obligated to support;
Necessary services rendered or necessary supplies furnished to the beneficiary or to a person whom the beneficiary is obligated to support; or
An offense or quasi-offense committed by the beneficiary or by a person for whose acts the beneficiary is individually responsible.
La. R.S. 9:2005(3) was repealed by Acts 2004, No. 521, § 2. Counsel for plaintiff mentioned the amendmentspecifically the effective date of the amendment, August 15, 2004at the March 11, 2005 hearing on relator-trustee's exceptions. The relator-trustee mentioned the amendment in his memorandum in support of his exceptions, but makes no argument that the pre-2004 amended version of La. R.S. 9:2005 does not apply. The relator-trustee did state in his trial court memorandum that if the August 10, 2004 writ were not valid, then plaintiff would be unable to attach the trusts. The relator-trustee does not mention the amendment to La. 9:2005 in his writ application.
The defendant-debtor's interests in the trusts have been seized, as evidenced by the August 10, 2004 Notice of Seizure from *57 the Orleans Parish Civil Sheriff's Office directed to the relator-trustee.
Under La. R.S. 9:2005, insofar as the instant case is concerned, the trial court may permit seizure of any portion of the beneficiary's interest in trust income and principal if such seizure is: (1) for a claim based on a judgment for an offense or quasi offense committed by Janette Moss or by a person who whose acts she is responsible; and (2) the seizure is "just under the circumstances."
The plaintiff's petition for writ of attachment set forth well pleaded allegations that the foreign judgment was based on claims of fraud, intentional infliction of emotional distress, tortious interference, negligent misrepresentation and gross negligence, i.e., claims for offenses or quasi offenses under La. R.S. 9:2005(1). The plaintiff's petition also made the following allegations concerning an involuntary bankruptcy proceeding filed against the defendant-debtor in Texas:
On September 13, 2001, the Texas Bankruptcy Court issued its Findings of Fact and Conclusions of Law. The Texas Bankruptcy Court concluded as a matter of law that "[plaintiff] Littleton's entire claim, based on that judgment for $1.8 million plus judgment plus post-judgment interest and court costs is non-dischargeable, because the entire claim arose from Ms. Moss's fraud." Accordingly, the Texas Bankruptcy Court issued a judgment on September 13, 2001, ordering that the Texas Littleton Judgment is non-dischargeable.
Plaintiff's petition for writ of attachment was a summary proceeding and, based on the factual allegations in plaintiff's petition, the trial court implicitly found in its discretion that the allegations in the attachment petition of offenses and/or quasi offenses "just under the circumstances" as called for by La. R.S. 9:2005. La. R.S. 9:2005 does not require a contradictory hearing for the issuance of a writ of attachment. The regular rules of the Louisiana Code of Civil Procedure governing attachments are consistent with any requirements of La. R.S. 9:2005, in that any party seeking a writ of attachment always has to set forth sufficient factual allegations in his petition to justify issuance of the writ. La. C.C.P. art. 3501.[4]
Accordingly, we find that the trial court properly denied the relator-trustee's exceptions as to this issue because: (1) There is no requirement that the party requesting the writ of attachment negate potential defenses which may never be raised by the defendant/debtor as long as the party requesting the writ sets forth one of the grounds set forth in La. C.C.P. art. 3541 as the plaintiff did in the instant case; (2) Even if the plaintiff in the instant case could be said to have brought down upon himself the issue of La. R.S. 9:2005(3) by bringing it up in his petitions for writ of attachment, the plaintiff set forth sufficient allegations to allege a prima facie case for seizure under La. R.S. 9:2005(3). The trial court sufficiently complied with the requirements of La. R.S. 9:2005 in the ordinary course of considering and issuing the writ of attachment.
This does not mean that the relator-trustee is not entitled to move for a contradictory hearing under La. R.S. art. 3506 to show that the plaintiff cannot prove his allegations related to La. R.S. 9:2005. All *58 this Court is saying at this time is that the well-pleaded allegations of the plaintiff's ex parte petition for attachment were sufficient to comply with the requirements of La. R.S. 9:2005 and La. C.C.P. art. 3501 and that there was no error based on what the trial court had before it at the time the trial court issued the writ of attachment on August 10, 2004. In other words, we view the instant writ as limited to reviewing the trial court's actions of August 10, 2004.
The relator-trustee's third and final argument is that the trial court erred in denying his exception of prematurity because the August 10, 2004 writ of attachment issued while the July 20, 2004 writ of attachment was still in effect.
Counsel for plaintiff stated at the March 11, 2005 hearing that plaintiff obtained the second writ of attachment as a precaution, because trustee McDaniel was attacking the issuance of the first writ, which attack was ultimately successful. Counsel for plaintiff conceded at the March 11, 2005 hearing that he wanted to obtain the second writ of attachment before the effective date of the 2004 amendment to La. R.S. 9:2005 that removed the ground for seizing a trust where the judgment was based on an offense or quasi offense committed by the trust beneficiary or someone for whom the trust beneficiary was responsible.
This court reversed the trial court's denial of the relator-trustee's motion to dissolve the first writ in Littleton v. Moss, unpub., XXXX-XXXX (La.App. 4 Cir. 11/17/04), writ denied, XXXX-XXXX (La.4/8/05), 899 So.2d 10, on the ground that Janette Moss had an agent for service of process registered with the Louisiana Secretary of State on the date the petition for the writ was filed and the writ issued. As noted, the only ground upon which the writ could have been issued was pursuant to La. C.C.P. art. 3541(5), where the defendant "[i]s a nonresident who has no duly appointed agent for service of process within the state." As to this ground, plaintiff had represented in his petition for the first writ of attachment the following:
4.
The Louisiana Secretary of State records reflect that Moss appointed Malcolm Monroe and Marian Mayer Berkett as agents for service of process in 1983. However, Malcolm Monroe died on July 30, 2001, and Marian Mayer Berkett has indicated to undersigned counsel that she no longer represents Moss and that she is no longer Moss's agent for service of process. Moss therefore has no duly appointed agent for service of process in the State of Louisiana.
The problem was that at the time of the July 20, 2004 petition for writ of attachment Marian Mayer Berkett had not filed a written notice of revocation as the defendant-debtor's agent for service of process. She did not do so until August 9, 2004, and the Secretary of State's Office recorded it on August 10, 2004prior to the time plaintiff filed his second petition for writ of attachment on that same date.
The relator-trustee cites no definitive authority for the proposition that the second writ of attachment was premature and/or without effect. It can be noted that relator-trustee filed his motion to dissolve the July 20, 2004 writ of attachment on August 4, 2004. The trial court denied the motion at a hearing on August 13, 2004. This court reversed on November 17, 2004, and the Louisiana Supreme Court denied writs on April 8, 2004.
La. C.C.P. art. 3506 provides for the contradictory motion to dissolve the writ of attachment, and states that if the writ of attachment is dissolved the action shall proceed as if no writ had been issued. Thus, once the writ was dissolved, insofar as plaintiff's action for recognition of the *59 Texas judgment was concerned, it is as though the July 20, 2004 writ had never been issued. As the attachment of July 20, 2004 is without legal effect, it can serve as no impediment to the issuance of the August 10, 2004 writ of attachment.
For the foregoing reasons, relator's application for supervisory writs is denied.
WRIT DENIED.
McKAY and LOVE, JJ., concur in the result.
NOTES
[1] Littleton v. Moss, unpub., XXXX-XXXX (La. App. 4 Cir. 11/17/04), writ denied, XXXX-XXXX (La.4/8/05), 899 So.2d 10.
[2] It was represented at the March 11, 2005 hearing at issue by counsel for the trustee that the trial court overruled the objection by the curator at the August 13, 2004 hearing. Thus, the trial court has denied the curator's exception of lack of jurisdiction over the person.
[3] It is unclear precisely which exception this argument pertains to, as McDaniel does not reference either his exception of no cause of action, lis pendens or prematurity to this issue.
[4] La. C.C.P. art. 3501 states in pertinent part:

A writ of attachment or of sequestration shall issue only when the nature of the claim and the amount thereof, if any, and the grounds relied upon for the issuance of the writ clearly appear from specific facts shown by the petition verified by, or by the separate affidavit of, the petitioner, his counsel or agent.