DOWNING, J.
 

 |2Richard M. and Nicole Chashoudian appeal two judgments rendered against them and in favor of Leonard Pate, as trustee of the Kathleen Reges Living Trust (“the Trust”), and Leonard Pate dated March 4, 2008 and March 6, 2008. This appeal addresses the March 4, 2008 judgment, although the issues are intertwined.
 
 [1]
 
 For the following reasons, we reverse the judgment of the trial court in part and affirm in part.
 

 PERTINENT FACTS AND PROCEDURAL HISTORY
 

 Kathleen Reges was the owner of purebred, champion-quality wire fox terrier dogs when she died in July 2005. On Reges’s death, the Trust became the owner of her dogs. The Chashoudians are world-class trainers for this breed of dog, and Reges was boarding at least four of her terriers with the Chashoudians. Apparently, Reges and the Chashoudians had an oral contract in which Reges paid the Chashoudians $2,500.00 per month for the care and training of the dogs.
 

 After Reges’s death, a dispute arose between the Chashoudians and Pate, the trustee, over expenses for the dogs. Pate paid the $2,500.00 for two months, but on October 17, 2005, he advised the Chashou-dians in writing that all agreements were cancelled. He requested all records for Reges’s dogs in the Chashoudians’ possession. In November 2005, he made an additional payment of $2,500.00. He made no more payments for the care of the dogs. He did not request return of the dogs until he did so in a letter dated December 17, 2005.
 

 After correspondence and demands back and forth, the Chashoudians filed suit against Pate and the Trust in May 2006 for services rendered in caring for the dogs. They also obtained a non-resident writ of attachment for four dogs, which seized the dogs, in place, and appointed the Chashou-dians their keepers. In June 2006, Pate filed a reconventional demand asserting conversion of property and |Kseeking a writ of sequestration and injunctive relief. The Chashoudians amended their petition to assert a right of pledge and retention pursuant to La. C.C. arts. 3224 and 3225. The dogs were released to Pate by order dated September 5, 2006.
 

 The principal and reconventional demands came on for bench trial on February 26, 2007. The trial court entered two judgments in favor of Pate. The first, a partial final judgment, was signed March 4, 2008, and addressed Pate’s claims in reconvention. The judgment states that “said dogs were improperly seized through a writ of attachment” by the Chashoudi-ans. The trial court then issued decrees as follows:
 

 • IT IS HEREBY ORDERED, ADJUDGED AND DECREED that the claims of the plaintiff-in-reconvention, Leonard Pate, are hereby granted;
 

 • IT IS FURTHER ORDERED, ADJUDGED AND DECREED that, within thirty (30) days of the signing of this order, the defendants-in-recon-vention shall produce to Pate all property of the Trust, which is in their possession, including dogs, documents, awards, and any compensation from the use, sale or transfer of the dogs,
 
 *51
 
 and the defendants-in-reconvention shall give a full accounting of all property not currently in their possession;
 

 • IT IS FURTHER ORDERED, ADJUDGED AND DECREED that any future receipt of property of the Trust by the defendants-in-reconvention shall be produced to Pate, including, but not limited to, the dog with the call name of “Leo”, and any compensation from the lease of said dog;
 

 • IT IS FURTHER ORDERED, ADJUDGED AND DECREED that all costs of these proceedings, judicial interest and attorney fees ($21,619.50) of the plaintiff-in-reconvention, shall be paid by the defendants-in-recon-vention.
 

 The second final judgment, signed on March 6, 2008, addressed the Chashoudi-ans’ claims. The judgment stated that “any prior agreements with Kathleen Reg-es were properly terminated by the Trust in correspondence, dated October 17, 2005, and that no subsequent expenses of the plaintiffs were necessary.” The trial court then issued decrees as follows:
 

 • IT IS HEREBY ORDERED, ADJUDGED AND DECREED that the claims of the plaintiffs for payment of services are hereby dismissed;
 

 • IT IS FURTHER ORDERED, ADJUDGED AND DECREED that claims of the plaintiffs for any expenses incurred after October 17, 2005 are hereby dismissed;
 

 14* IT IS FURTHER ORDERED, ADJUDGED AND DECREED that all costs of these proceedings are assigned to the plaintiffs.
 

 The Chashoudians filed motions for new trial on both judgments, which were denied. They now appeal asserting five assignments of error, as follows:
 

 1. The trial court erred by not awarding the Chashoudians the costs and expenses they incurred during the 11-1/2 months in which the Chash-oudians maintained the possession and provided care and daily sustenance to the dogs, or by awarding the Chashoudians their necessary expenses in caring for the dogs.
 

 2. The trial court erred by failing to recognize that the seizure by the Chashoudians was proper because the Chashoudians held a privilege, in the nature of a pledge, for expenses incurred in caring for the dogs.
 

 3. The trial court erred in finding that the seizure of the dogs was improper, pursuant to La. R.S. 13:3881 and/or any of the exceptions stated thereunder, because the statute is inapplicable to the facts presented.
 

 4. The trial court erred by awarding attorneys’ fees as a result of an alleged wrongful seizure because no wrongful seizure occurred or, at a minimum, by failing to limit the award of attorneys’ fees to those related to securing the return of the seized dogs.
 

 5. The trial court erred by requiring that the Chashoudians give certain property to Pate, give a full accounting for all property held by the trust, and pay Pate certain lease compensation.
 

 DISCUSSION
 

 This opinion addresses the second through fifth assignments of error. These assignments of error are raised under the March 4, 2008 judgment and concern Pate’s claims.
 

 Propriety of Nonresident Writ of Attachment
 

 In assignments of error 2 and 3, the Chashoudians challenge the trial court’s
 
 *52
 
 finding that the “dogs were improperly seized through a writ of attachment.” Assignment of error 4 challenges the consequent award of attorney fees. We agree with the Chashoudians that the writ of seizure was a properly granted nonresident | ¡¡writ of attachment pursuant to La. C.C.P. art. 3541
 
 [2]
 
 and that no damages or attorney fees are due as a result of its issuance.
 

 Pate argues that the seizure was improper because he claims the dogs were exempt from seizure pursuant to La. R.S. 13:3881 A(4)(f), which provides as follows:
 

 A. The following income or property of a debtor is exempt from seizure under any writ, mandate, or process whatsoever, except as otherwise herein provided:
 

 (4)
 

 (f) All dogs, cats, and other household pets.
 

 This court has ruled in
 
 Clarke v. Patton,
 
 16 So.2d 585, 587 (La.App. 1 Cir.1944), however, that nonresident defendants cannot avail themselves of statutory exemptions against a nonresident writ of attachment, as follows:
 

 The defendant having failed to prove that he was domiciled in this State, the writ of attachment was properly issued and is well founded.
 

 In so far as defendant’s contention that the automobile is exempt from seizure, since we are of the opinion that he was not, at the time of the issuance of the writ, domiciled in this State, Article 644 of the Code of Practice is not available to him.
 
 See Lambeth v. Milton,
 
 2 Rob. 81, and cases annotated thereunder.
 

 In
 
 Lambeth v. Milton,
 
 2 Rob. 81, 81 (1842), the supreme court explained why statutory exemptions in the nature of the one at issue do not apply to nonresidents, as follows:
 

 Can any of these reasons [supporting statutory exemptions] apply to cases of attachment where the debtor is residing abroad, or has permanently left the state? Where a debtor has absconded, leaving |fibehind him his linen and clothing, his bed, his arms, and military accoutrements, or the tools and instruments of his trade or profession, none of these effects can avail him in the manner and for the uses contemplated by law; and all his property of every description ought to be, and is liable to be seized for the payment of his debts. Article 241, under which defendant’s books were attached, renders
 
 all species of property
 
 of the absent debtor liable to seizure. It is not, in our opinion, modified or restricted by article 644, which provides for a different case. The exemption which it pronounces in favor of one class of debtors, should not be extended to another class, differently situated, and not at all entitled to the same favor.
 

 But
 
 see Laurencic v. Jones,
 
 180 So.2d 803, 804-05 (La.App. 4 Cir.1965), for a qualifying view. The court explained why claims for salary and workers’ compensation benefits could be exempt. As discussed next, however, the exemption at issue is confined to a debtor’s household pets that could be seized in Louisiana.
 

 
 *53
 
 Regarding the nature of the exemption at issue, the plain statutory language exempts a debtor’s household pets, including dogs. It does not exempt all dogs.
 

 To the extent, however, that the exemption may be ambiguous, we resort to statutory construction. In this regard, “every word in a statute must be given meaning, if possible, and no word, clause, phrase or sentence of a statute shall be deemed meaningless or surplusage if a construction can be legitimately found that will give force to and preserve every word of the statute.”
 
 Burmaster v. Plaquemines Parish Government,
 
 07-2432 (La.5/21/08), 982 So.2d 795, 804. Accordingly, we are obliged to give meaning to the word “other” in the exemption, if possible.
 
 Id.,
 
 07-2432, 982 So.2d at 804.
 

 If the exemption applied to “All dogs, cats, and household pets,” clearly all dogs would be covered. The exemption applies, however, to “All dogs, cats, and other household pets.” (Emphasis added.) The only reasonable statutory construction we can make that gives meaning to the word “other” is that only dogs falling within the general category of household pets are exempt. Such interpretation produces a reasonable result.
 
 See Id.
 

 17This interpretation is consistent with the stated purpose of the enabling act, 1991 La. Acts 856, that added the exemption for household pets. The act is entitled, “SEIZURE-EXEMPT PROPERTY-HOUSEHOLD PETS,” and its statement of purpose asserts that its purpose is to exempt household pets, as follows:
 

 AN ACT to amend and reenact R.S. 13:3881(A) (4)(d) and (e) and to enact R.S. 13:3881(A)(4)(f), relative to exemptions from seizure; to include household pets within the list of those items which are exempt; and to provide for related matters. (Emphasis added.)
 

 From the record, it is clear that the dogs at issue were never Pate’s, nor Reg-es’s, household pets. Pate argues in brief that the trial court made a finding that the dogs were household pets, but such a finding cannot be found in the record. Accordingly, we conclude that the dogs at issue were not exempt from seizure.
 

 In
 
 Alessi v. Belanger,
 
 93-2047 (La.App. 1 Cir. 10/7/94), 644 So.2d 778, 786, this court considered a defendant’s motion to dissolve a nonresident writ of attachment. This court explained that the purpose of the motion to dissolve is to prove the grounds for issuance of the writ, not the merits of the main demand, as follows:
 

 The merits of the main demand should not be inquired into on the motion to dissolve writ of attachment. Rather, the purpose of the motion to dissolve is to require the plaintiff to prove the grounds upon which the writ of attachment issued, that being, in the instant case, the nonresidency of defendant.
 

 Id.
 
 The
 
 Alessi
 
 court observed that under La. C.C.P. art. 3506, a court may allow damages for wrongful issuance of a writ of attachment.
 
 Alessi,
 
 644 So.2d at 787. The court ruled, however, that the nonresident writ of attachment was issued properly and that no damages were due, as follows:
 

 For the reasons stated above in our discussion of the trial court’s denial of defendant’s exception of lack of quasi in rem jurisdiction, this court concludes that the writ of attachment did not issue |Rimprovidently as argued by defendant, but instead was properly based upon the nonresidency of defendant. Thus, defendant’s claims for damages for improvident issuance of the writ of attachment are without merit.
 

 Id.
 

 See also Littleton v. Moss,
 
 05-0613 (La.App. 4 Cir. 7/29/05), 914 So.2d 51, 56,
 
 *54
 
 where the court specifically held that a plaintiff is not required to establish that attached property was not exempt before obtaining a nonresident writ of attachment, as follows:
 

 [T]he law does not require the plaintiff in the instant case to establish that the assets of the defendant/debtor held in the attached trusts are not exempt from seizure. It was sufficient for the plaintiff to allege under La. C.C.P. art. 3541(1) that the defendant/debtor was “a nonresident who has no duly appointed agent for service of process within the state.”
 

 Here, the writ of attachment here was properly based on the nonresidency of defendant. From the record it appears that proper procedure was employed and bond was posted. Accordingly, we conclude the trial court erred as a matter of law insofar as it ruled that the writ was wrongfully issued. We will, therefore, reverse the March 4, 2008 judgment insofar as it awards attorney fees in favor of Pate. The Chashoudians’ second, third and fourth assignments of error have merit.
 

 Trust Property
 

 The Chashoudians argue in their fifth assignment of error that they cannot deliver unknown property to Pate or give him an accounting for such unknown property. They argue that Pate did not establish what property is owned by the Trust. The trial court found, at least implicitly, that all Kathleen Reges’s property held by the Chashoudians was Trust property. We find no error in the trial court’s ruling that the Chashoudians should produce all such property and to account for all such property not in their possession. The Chash-oudians obviously cannot account for property unknown to them. We find no merit in these arguments.
 

 1
 
 JLease of Leo
 

 In their fifth assignment of error, the Chashoudians also challenge the decree ordering them to pay “any compensation from the lease of [Leo].” Leo was one of Ms. Reges’s champion show dogs. She signed a lease prior to her death, leasing her dog, Leo, to a dog enthusiast in Japan for the period from January 1, 2006 to January 1, 2008. The lease provided that all payments should be made to Mr. Chashoudian, as follows:
 

 J. The compensation for this lease will be transferred to Richard Chashoudian as in past leases and dispersed (sic) as in past leases by him.
 

 Neither of the Chashoudians was a party to the lease, although Ms. Chashoudian was a witness and she transcribed it.
 

 The trial court gave no reasons for invalidating this term of the lease. It made no finding of error, fraud, duress, or other vice of consent. We see no basis for the trial court to modify or invalidate the lease agreement to which the Chashoudians were not a party. Accordingly, we will reverse the trial court judgment in this regard. This aspect of the fifth assignment of error has merit.
 

 DECREE
 

 For the foregoing reasons, we reverse the March 4, 2008 judgment insofar as it 1) grants all Pate’s claims, 2) orders the Chashoudians to pay attorney fees, and 3) orders the Chashoudians to pay “any compensation from the lease of [Leo].” In all other respects, the March 4, 2008 judgment in this matter is affirmed. Costs of this appeal are to be split equally, one-half by Richard M. and Nicole Chashoudian and one-half by Leonard Pate, individually and as trustee of the Kathleen Reges Living Trust.
 

 
 *55
 
 REVERSED IN PART; AFFIRMED IN PART.
 

 CARTER, C.J., concurs.
 

 WHIPPLE, J., concurs in the result.
 

 [1]
 

 . The appeal of the March 6, 2008 judgment is addressed in a companion case. 2008CA1985 (unpublished).
 

 [2]
 

 . Louisiana Code of Civil Procedure art. 3541 provides the grounds for a writ of attachment in pertinent part, as follows:
 

 A writ of attachment may be obtained when the defendant:
 

 ⅜ ‡ ⅜ ⅜
 

 (5) Is a nonresident who has no duly appointed agent for service of process within the state.